Case No. 22-1153 Salvatore Mirabella Jr. v. Town of Lexington, MA My name is Ronald Dunbar, and I represent the plaintiff, Salvatore Mirabella. And may I reserve two minutes for rebuttal? You may. Thank you. In this case, the district court erred when it granted summary judgment with respect to Mr. Mirabella's intentional interference with contractual relations claims against Mark Gore, and specifically with respect to the advantageous relations with Bentley, Merrimack, and also Rowley Police Department. This court reviews de novo the court's granting of summary judgment. And in this case, the court is supposed to make all reasonable inferences in favor of the non-moving party. And the facts, I think, are essentially undisputed as to what happened in the case. But the court made all the inferences in the opposite direction, in favor of the defendant. And also made some improper weighing of evidence, and also some credibility determinations. With respect to Bentley, the evidence is that Gore, he volunteered that Mirabella was going to try to unionize the Bentley Police Department. And also, that once he got there, he was going to, Mirabella was going to cause trouble. And the court, the district court, decided that because there was evidence that Bentley didn't hire, because Mr. Mirabella didn't let Bentley complete a search of the home for weapons, that that was the reason. Without letting the jury know. Wasn't that the reason that, excuse me, counsel, wasn't that the reason that Bentley said they didn't hire him? So, Bentley said as the reason, yes, that because Mr. Mirabella didn't allow him into the house to look for the weapons, to see if they were stored safely, that they couldn't complete their investigation. But I think a jury would be allowed, based on the evidence that Mr. Gore had said that he was going to unionize Bentley, that he was going to cause trouble when he was there, combined with the evidence that Mr. Mirabella said, I offered to have them come back. My kids were upstairs. I said, if you come back tomorrow, you know, you can do the search. But a jury could do that. But how could a, I mean, the town of Bentley, there's an internal document, right? From, in the records of the town of Bentley saying that they made the decision they did because he would not allow them to complete this firearms investigation. So, you have that document. I mean, how does a reasonable jury disregard that in light of, say, your client's insistence? Well, no, no. In fact, Mr. Gore has acknowledged that he did say something to the Bentley officials about how he may pursue union activities if he's hired there. I mean, how could a reasonable jury disregard the town's own assertion in writing in an internal document that that's why they did it? How do you get a genuine issue of material fact out of that scenario? Sure, you're right. Yeah, and the jury could believe that, Your Honor. But also, in that same document was the notation that the Bentley Police Department was told that Mr. Mirabella was going to try to unionize them. It was going to cause trouble when he got there. So, a jury could go, and that's the point, I think, with the summary judgment. The reasonable inference could be he was not hired because of the unionization issue, not because of the inability to complete an investigation where Mr. Mirabella said, I invited him to come back. So, it's just the reasonable inferences that the judge was drawing down below always were in the favor of the defendant, where I think a jury sitting there could say, well, he invited him to come back the next day. It's clear nobody disputes, and it's in the documents. And the court, his deposition didn't deny it. He did say that he tried to unionize them. So, I think a jury could go either way on that. But I think a reasonable inference should allow that to get to the jury on that issue. So, it's the fact that there's that notation in the file that they – what exactly does that notation say, if you could recall? I don't believe I have it in front of me. On the unionization issue? It essentially says, and I quote it in the brief, but it essentially says that Kaur informed Bentley that once Sal got there, he was going to cause trouble because he didn't think that the benefits and pay were good enough at Bentley and was going to use his union experience to change that. And then I think the officer also interpreted that. The Bentley officer put a notation as well saying Kaur said he was going to stir up some shit, I believe was the language from the document. So, I think the jury should be allowed to consider that evidence, given that there was a standard in place at Lexington where Kaur said, we treat Sal differently when it comes to how we give references. And there was a good comparison with there was another officer who was investigated for putting sexual photos on a town computer and retired and left and went to Bentley, and when Bentley was doing its interview, Kaur didn't talk to Bentley. And when it was pressed in his deposition, he said, well, it's different for Sal. That's why Kaur was the one interacting with Bentley. So, I think the different rules that were in place with Mirabella and the evidence, you know, the documentary evidence, I think the jury should be able to make a reasonable inference that it was Kaur's activity that interfered with his advantageous relationship with Bentley. And how is that inference reasonable from the perspective of an employer which has no dog in the park? It's a mutual product. If it has record determination stating it's reasonable decision and you have zero evidence of pretext on the part of Bentley, I don't understand how a reasonable jury can simply disregard Bentley's explanation and say, no, that's Kaur, the real reason there's something else. If there was evidence of pretext, I don't agree with you. There's no evidence that Bentley is operating detectively. I think the evidence is, Your Honor, that in the context of, and it was not easy to get any information out of these various police departments. As you might imagine, they're pretty closed-mouthed when it came to sort of what each other were talking to each other about with respect to this investigation. So having the documentary evidence was very helpful. But I don't think we need to prove a pretextual motive on behalf of Bentley. Just that it was Kaur's statement to Bentley about trying to unionize them and causing trouble once he gets there was the causal reason for them not hiring. The jury could decide. That couldn't have been the causal reason on why Bentley's statement was pretextual. That's just an indirect way of saying that Bentley's statement is false. Bentley put down a reason that wasn't the truth. Correct me if I can just address that briefly. Correct. So I think the jury could make that decision based on the evidence that was in the report as to what Bentley was considering when it decided not to hire Mr. Maribel. That it was both the unionization issue and the— If I'm understanding, we usually have a pretty high bar to say that the reason given is pretextual on the ground that it's implausible or something like that. If I'm understanding your argument, you say this case is a little bit different because there is additional evidence of the cause of the statement being issued and so that the jury should be able to combine effectively what might be doubts about the integrity of the reason given, even if they wouldn't be enough to show it's a sham, but combined with the evidence showing why it may have been issued. Those two together suggest essentially like it was a cat's paw type thing. Is that the idea? Correct. That's the idea that if you look at the documentary evidence and you have statements in there that Gore said Maribel was going to try to unionize and cause trouble when he gets there, combined with the reason Bentley gave was that they couldn't complete an investigation, combined with Maribel saying come back tomorrow, the kids are upstairs. A jury could say, well, why didn't they come back tomorrow? We think that the reason put in there is not the reason. The real reason is they didn't want to hire a troublemaker. So that's the argument. Thank you. Thank you. May it please the Court, Gareth notice for the appellees of Marquardt and the town of Lexington. I think on the intentional interference with contractual relations claim, there's two elements that are important there. There's the improper motive and means, and then there's the causation standard. And I think if the Court looks closely at the record for each of the potential employers, there were grounds to dismiss the claim on both prongs of the case. There was no evidence of any improper motive or method that was used by Chief Gore here. In fact, this was a rudimentary inquiry by a prospective employer that Mr. Mirabella had signed off on in many cases, and I think in almost all the cases, on a written release authorizing the employer to give his review and answer questions about his employment. And that's exactly what Chief Gore did. There's absolutely nothing wrong with an employer giving his view on what the employee's performance was as an employee and relying on the record that's in the personnel file. There's nothing improper that Chief Gore did in any of these situations. And as the trial court noted, there was absolutely no element or no proof of causation. What was there in the files of the town about his plans to go to Bentley and cause trouble, unionize? I mean, that information came from an overheard conversation, right? There was nothing in the personnel files about that. There was not, Your Honor. Okay, all right. So his claim is that he had problems with the chief and the chief was out to get him, and his motivation out of a longstanding animus was to make sure he doesn't get another job in another police department. I mean, those are his allegations, right? Those are his allegations. And he's entitled to say that, right? I mean, that's a legitimate source of evidence, right? It is. The evidence did not come from the Bentley University Police Department, however. They weren't deposed in the case. There was no evidence that that was the basis of their decision. The only evidence of any weight in the record as to what the causation was of their decision was what was in writing in that form. The courts did acknowledge in a deposition that he did say these things to the Bentley officials. Isn't that correct? That is correct, Your Honor. Right. But what we're lacking here is any evidence, any tangible evidence that Bentley based its decision on that statement. So you have to have both prongs. One other thing that was in a footnote in the judge's decision was that she didn't base her decision on it, but she certainly could have based her decision on the releases that were signed by Mr. Mirabella that released the town and its employees of any liability for providing information to these prospective employers. And that, in and of itself, provided a basis that the court could have dismissed the intentional interference. What are we supposed to make of that? I mean, there's this alternative basis, but I'm not going to – I don't – on the elements of the claim that I described, the improper means and the causation issue, there was just no scintilla of evidence to support it. So she didn't need to reach to that, the release argument. But she noted it in a footnote to suggest that even if the court didn't – maybe anticipating an appeal, even if the court didn't accept that there was a factual issue about, for instance, this union issue, that the court could certainly rely on the releases to show that Mr. Mirabella knew that this was a possibility, that he signed these releases, and that he was prospectively releasing both defendants from any liability for these claims. And that was a decision that he made. He knew what his performance was with the town. He knew that Chief Core disagreed with his decision to decide to take the marathon day off because that was Patriots Day in the town of Lexington, and that's a very important day, sort of a unique set of circumstances for a police department. And so, in fact, he resigned his position based on that decision. So he knew when he signed those releases that there could be some very negative information that came out, both in writing and from Chief Core directly during those inquiries. Counsel, what are we supposed to do with the town of Raleigh incident? I mean, I guess the chief of the Raleigh Police Department says that I based my decision not to go through with a hiring because I was upset that he would leave a job at 23 years because he was upset that he could not run in the Boston Marathon. But he says, in opposition to that explanation, that he was told by, I think, a member of the Raleigh Police Department, Officer Sedgwick, that Core actually talked a lot about sexual misconduct and an officer named Kiev, who was in the Raleigh Police Department, I think said, in effect, the chief did you in or something like that. So he's got those alternative versions of why he did not get that job. Has he generated on that a genuine issue of material fact? I don't think that's supported by the record, Your Honor. In what way? I mean, those statements of Sedgwick and Kiev are not in an evidentiary form that can be considered on summary judgment. Is that what you're saying? There was a report from Sergeant Yev that said that the plaintiff indicated that he left due to wanting to run the Boston Marathon, having signed up for the same and being denied the day off. He told the Raleigh Police Department that that was his decision. And there was also, and then the sergeant referenced the letter that was in the file, and also that Chief Core had referenced that when he was questioned about it. So there's, and Chief Dumas actually stated that that was the basis for one of his, that it showed poor judgment. And there's nothing improper about Chief Core relaying that to the Raleigh Police Department. And then, frankly, there's nothing improper about them basing their decision on it. That's a rational reason for a police department not wanting to hire an officer. So we sort of have a, we have a situation here like the Bentley situation where we're being asked to doubt the rationale that is given by the potential hiring authority, right? I mean, that's what we're, that's what we're being asked to do. And these are authorities that have no axe to grind. They don't, Your Honor, and I don't think, you know, I think there's several steps that are lacking here. You know, there's no improper motive or means by Chief Core. There's no evidence that something improper was the cause of the employer's decision not to hire Mr. Mirabella. And then on its face, there's nothing improper about a prospective employer saying, we don't think that's appropriate. We don't think it's appropriate for you to just decide you're not going to work on Patriot's Day because you want to run the Boston Marathon. That's not an officer that we want to have in our department. That's completely proper. It's not malfeasance. It's not showing any sort of improper motive by Chief Core or by the town works. With that, I'll rest unless there are further questions. Thank you. Thank you. Just, my name is Ronald Dunbar, again, representing the plaintiff. I just wanted to address briefly the release issue as a footnote in the judge's opinion. I raised in opposition that the release defense was waived. So the first thing the judge says, assuming it wasn't waived, and then the judge says, I didn't do any analysis. So there really is no analysis of the issue. So I would submit that there's not a basis to, on appeal, just based on the footnote, say that the release is somehow part of the court. And if there's no further questions, I would rest on my brief. Thank you. Thank you. That concludes our argument in this case.